We will hear argument next in No. 221954, Inline Plastics v. Lacerta. Good morning, Your Honors. May it please the Court, my name is David Silvey. I represent the patent holder and appellant here, Inline Plastics. This appeal concerns five patents that are directed to tamper-resistant, tamper-evident containers that are found in households throughout the United States. In the limited time I have today, I'd like to address a few of the issues on appeal, and I apologize for the scope of the appeal, but it's sort of out of our control. This Court has long recognized the critical role and powerful influence the District Court asserts over juries in patent cases. This case exemplifies how a District Court's erroneous determinations can have a prejudicial impact on a jury's deliberations. And the first topic I'd like to talk about today is the jury instructions. The jury instructions provided by the District Court included multiple improper theories, and they tainted the jury's verdict, finding all the asserted claims across five patents to be invalid. There were three invalidity theories presented. The first was written description. Despite Inline's objections, the judge included a written description in the jury charge. We pointed out that a written description defense was never mounted. The only mention of written description was in an answer to the complaint or an amended answer to the complaint. There was nothing in Lacerda's expert reports, nothing in their infringement contentions, and ultimately ended up being no testimony related to written description or at least directed to written description. Yet the charge was allowed to go to the jury. There wasn't any rationale stated, Your Honor. The expert who was on the stand at that point had either testified to it yesterday or testified to it today, and that testimony ultimately never came, but there was nothing on the record from the judge other than overruling our objection. The second invalidity theory listed concerned indefiniteness, and we certainly had a number of challenges along the way to indefiniteness. First of all, we had a claim construction hearing where indefinite, several terms that were considered indefinite by Lacerda were reviewed. Lacerda sought to postpone the determinations of the court at that point in time, but the court said, no, I'm going to go forward and rule that the terms at issue are definite. As we approached trial, plaintiff's expert, excuse me, defendant's expert report listed indefiniteness as a challenge with respect to some additional terms. Prior to trial, we moved to eliminate to prevent such testimony as being late at this point in time, effectively trying to argue claim construction to the jury, but the judge declined to accept our motion and allowed indefiniteness testimony to be presented at trial. Further complicating, excuse me. What was allowed was or was not. I'm sorry, I speak slowly, so you're just going to have to be patient. I apologize for that. You said that the district judge found something definite at claim construction. Now you're talking about a later raising of an issue about indefiniteness. Was the later raising of the issue about indefiniteness as to the same claim elements that the judge had ruled definite earlier or on different claim elements? They were different claim elements, Your Honor. And that's what went to the jury, the indefinite charge as to different claim elements than from the elements that the district court during claim construction addressed indefiniteness on? Correct, Your Honor. At trial, we had a number of issues. The first being that ultimately what was presented on indefiniteness was actually not even the indefiniteness argument that was in the expert's report. On appeal now, tell me, am I right about this? The only challenge you have regarding indefiniteness is that it should not have been given to the jury, either or both, because it had been forfeited by the other side for not having been timely presented and or because the jury has no business addressing indefiniteness and it must be for the judge. Well, I would say there are instances where the jury would look at factual determinations that underpin an indefiniteness analysis, but in this instance, we were, one, the timeliness of it, as you suggest, and the other, that they were arguing claim construction to the jury. Indefiniteness is based on what's within the patent, and in this instance, unlike in vomiting... Not always. It's not always based on what's in the patent. Sometimes you have terms where knowledge of skilled artisans, extra patent knowledge about the number of different methodologies for measuring the existence or non-existence... Don't worry about time in this case, okay? Whether there were different measurement techniques, there's a set of cases about that. Teva was one, basically, and that would involve... At least it would involve factual determinations based on extra patent material. I think I understand you saying that that kind of issue could go to a jury. Yes, well, that was the issue that was similarly presented in Bombardier, but this is not where we needed to rely on extrinsic materials. Why isn't this that? Because you would need to know from a skilled artisan where you would be measuring the height from. This is kind of a height term about the skirt or something? Correct, but I think what I guess I would like to tack on to that, beyond this general question of where would you measure the height, I think the patent itself gives you a pretty good understanding as to how the height of the skirt would be measured. But that being said, when you look at the indefiniteness argument that was ultimately presented, it was presented with an underpinning of the accused product, looking at the accused product and saying, we wouldn't know, looking at our product, how you would calculate height. To us, that's entirely improper. But just to be clear, I don't believe you asked for any kind of O2 micro-claim construction before going into trial to get a clarification on whether intrinsic evidence alone could adequately resolve any dispute about the height of the hinge limitation. Right. No, we did not, Your Honor. In the rationale, I would suggest, again, the argument that ultimately was presented at trial was a new one to us. We had never heard it before. There's the timing question, but we give discretion to judges on what is preserved, what can still be raised in the lead up to a trial. It doesn't have to always be presented at the markment for it to be preserved. And, Your Honor, I absolutely agree with you on this. And it wasn't just the first indefiniteness argument, which was not presented at trial. Where I think the rug really lies is that ultimately a very new indefiniteness argument was presented at trial. So it was a second argument that we certainly didn't have proper opportunity to prepare for. You know, our expert had to respond, you know, that day as to what this new argument meant. And again, I do not recall from your blue brief there being a challenge to the introduction of this evidence. Oh, absolutely, Your Honor. When I look at your statement of issues, the only one that mentions indefiniteness has to do with the jury instruction. Correct. Well, certainly at trial, as I indicated, we objected at A1752 to the indefiniteness testimony being new testimony. We certainly, again, objected to it. I'll just say, I didn't ask about what you objected to at trial. I asked you about what you appealed. Well, it was certainly part of our analysis with respect to the jury instructions that instructing the jury on indefiniteness in view of allowing this testimony was improper, particularly in view of the type of testimony that it was, that it was directed to the accused product and not actually directed to what the specification discloses. Would the content of the testimony be any different if there had not been a reference to the accused product? If it had been simply, I look at this height limitation and I have no idea where to measure. It seems to me in substance, I'm having trouble seeing what difference there is, whether you do or don't use the particular reference of the accused product to illustrate why I think a skilled artisan who would not be looking at that product would be uncertain where to measure this thing. I think a skilled artisan in looking at the patent specification and the drawings where we disclose the hinge. The hinge in relationship to the skirt and many of these limitations, the height of the hinge is in relation to the skirt. These are two structures that run parallel around the perimeter of the container. I don't think it's, at least obviously I've been working with these types of products for years, so for me it didn't seem it was an issue that was right for indefiniteness. I think the last, if you don't mind I'll move forward, is the jury's instructions on secondary considerations. I think they were inadequate in a number of ways, left off factors that we clearly had presented evidence for. I'm sorry, which were the factors that you say you presented to the jury, and I'm going to get back to what that means, presented to the jury. I just want to be concrete. Which of the secondary considerations went unmentioned in the jury instruction that you're complaining about? So industry praise, copying of others, licensing of others. We won awards, we had letters from clients. I'm sorry, I think you're repeating yourself, because the awards and the clients are... It would fall in the industry praise bucket. We had testimony relative to failure of others to develop a similar container. We had testimony in the record from Lyserda on their copying. We had a number of evidentiary letters that showed that we had either brought suit or reached out to others about a suit, about copying. So we had a vast majority of information, and in fact, we had compiled all of that into a response to an interrogatory at the very early stages to make it clear that we believed that we had a very compelling case of secondary considerations. And a lot of the secondary considerations factors that were left off by the court are factors that go to kind of an independent third party's view. We had dramatic commercial success with the product. You can challenge that on whether it was marketing and sales and all that. Commercial success was listed in the instruction. The only two that were listed were commercial success and long felt need and a caveat that unless you felt that there was substantial marketing and things undertaken that developed a commercial success. So this is not going to be precisely formulated, but much of your evidence would seem to go sort of simultaneously to long felt need, commercial success, and some of the unmentioned items. On the assumption that the jury rejected the commercial success and long felt need, either on their own terms or as sufficient to support an ultimate conclusion of non-obviousness, why would one think that the failure to mention the other items, could have made a reasonable difference? I'm not expressing skepticism about the answer to that. It seems extremely important to me to know what your answer is. My answer to that would be if the jury took a look at the instructions, it almost applied to them that they could discount those other factors. That the judge didn't include them in his instructions. So while they may have heard testimony throughout. Explain to me how those other factors could, in any reasonable way, matter in the mind of somebody, of a jury, that is rejecting the factors that were specifically presented to the jury. Well, first of all, those factors were, there was no rebuttal to any of those factors. So the jury only heard from in line with respect to those factors. Those factors are awards from an industry or evidence of copying. And I think they're very meaningful and I think a jury, if not instructed to take those into consideration, wouldn't have inherently looked to those. They're looking to what the judge specifically listed. And so that's why I think they're particularly meaningful. The only rebuttal testimony that the jury heard at all with respect to secondary considerations is one, our witnesses were asked on the stands about the declarations and they just said, isn't one declaration from a board member of in line and isn't one declaration about commercial success from your director of sales. Well, I mean, I certainly would argue who else is going to give a declaration of commercial success other than the director of sales. But so those two were attacked, at least from a cross standpoint. The others stand unrebutted and without attack. And so that's why I think it was very important for the jury to be instructed that those things are factors to be considered. Particularly, I think particularly interesting phrase. This was an independent packaging association. It was at least several awards, one for these packages. So that's why I feel it was particularly important that the jury be properly instructed. The customer letters, were they all submitted to the PTO during the prosecution? They were, and this is, I think, a point that I guess I neglected to mention. Were these letters generated specifically for the prosecution of the patent? It wasn't like these letters were already preexisting and then the patent attorney submitted them to the PTO, is that right? Your Honor, now we're going back to 2002, 2003 time frame. I can, as being involved in the prosecution, I can say we did not request them to be generated. Whether they were generated, under what manner they were generated, I can't be certain. They read somewhat similarly when I was looking at those letters. They were submitted through a declaration by August Lanzetta, right? Correct. It's entitled Commercial Success Declaration of August Lanzetta. I guess what I'm trying to understand is it possible that what you're terming now as industry praise may have been potentially understood as being part and parcel of your commercial success, secondary consideration factor. Certainly I'm not trying to commingle them. Right, well not now you're not. I understand that, but at least the evidence that was submitted, the prosecution histories that were given to the jury, this declaration says commercial success declaration and submitted with that were all these letters. There was testimony from Dr. Kazimer during trial that talked about these letters from customers, including Bill Monte and was directly asked, so how are these letters relevant to commercial success? Then Dr. Kazimer explained, well, they're relevant to commercial success because they like these products so much for the features that they have that they're willing to pay more for the products to get these features. In a way, in this record, there is at least some commingling of industry praise and commercial success. Maybe I'm trying to be charitable in interpreting what was the district court judge thinking. Maybe the district court judge could have potentially been thinking commercial success and industry praise as presented here are already kind of in together to the point where it would be redundant to say industry praise separate from commercial success. Perhaps that's what he was thinking, but that's certainly only one kind of component of the multitude of testimony and evidence we provided. I would also say, to answer your question, I think you're asking, why would you tack on the letter to the commercial success declaration? Your Honor, that was the first commercial success declaration. We have subsequently filed, in the following patents, a much more detailed and thicker commercial success declaration, which again was not rebutted. I think that letter in particular kind of goes to Nexus. It ties the sales to the product. The products were marked with the patent number, so there is an essence of presumption of Nexus, but the letter itself is from a customer saying, hey, this is why I believe that these things are. I think it's a great product. And the customer kind of walks through why. I think that in part establishes Nexus. Can I just ask you, so we have three different jury instructions that are challenged. What do you understand the law to be, including whose law, ours or the First Circuit's, about what we do if we think some of those instructions should not have been given? What do we do about the bottom line verdict? And there are too many permutations for me to enumerate them. I think that's a fair question, Your Honor. I think with all due respect, I do think in terms of whether we had charges that were improper, not the content of the charge, but whether it was proper to charge the jury or not, is a matter of First Circuit law. And I think the First Circuit has made it pretty clear that it follows the Baldwin Doctrine in almost every instance. The rare instance is where there's a reasonableness. You can be reasonably sure that the jury went with a charge that was properly supported over a charge that was not properly supported. In this instance, I certainly am arguing all three charges were really not proper. But with the assumption that you find one is proper, there's still no way of understanding why the jury, which charge, which theory the jury found invalidity under. Well, I thought it was agreed by the parties that the indefinite ascent written description dispute and therefore charges applied to only a subset of the claims, not all of them, so that we can be pretty sure, maybe even sure, that the jury, having found all the claims invalid, must have done so on the basis of obviousness, because it couldn't have found, I forget how to describe it, the non-skirt claims or something indefinite or lacking in an adequate description. Is that? Well, I don't think that's a fair interpretation of certainly how the First Circuit would view this. The First Circuit would not accept... The First Circuit recognizes some kind of harmless error doctrine, right? In rare circumstances. Generally, you know, the case law that's referenced in the brief, both sides briefing, like Davis, there was a curative instruction or at least a clarifying instruction that was given to the jury during deliberations. In others, it was really focused on the verdict form. Did the verdict form at least outline which claims that the theories apply to? So, assuming, on the assumption, which maybe you want to disagree with, but just assume for me, with me for a minute, that it's clear that the jury found obviousness of at least the non-skirt claims, because that was the only possible basis of validity, of invalidity for those claims. You have not made an argument, right, that the obviousness issue could differ between the skirt and the non-skirt claims. That is, for obviousness, the issue is it's all one ball of wax. Is that right? Well, I guess that's fair, Your Honor. I think that what the jury was reviewing would be different, right? Because we have claims that have the hinge height limitation in them, for example, that are more narrow. And now you're suggesting the jury on the, say, the broader claims that didn't include those limitations would have found for obviousness with respect to those. I would just say what really makes the difference is that we're talking about testimony from an expert. The jury was listening to testimony from an expert who really did not go through the four grand factors, right? So, there was no rebuttal to the obviousness, secondary considerations of non-obviousness. So, the jury wasn't afforded an opportunity to even hear rebuttal and for us to hear the expert on rebuttal. And I think that also, you know, there's a lot about what happened with the obviousness in the secondary considerations that not only, you know, walks into the jury and taints the jury instructions, but it taints the jury's reasonableness review and it taints whether, you know, the expert should have been permitted in the first place because it's in complete contradiction to the in-touch case which says an expert should not be testifying to the ultimate issue, ultimate conclusion of obviousness if the fourth factor has not been considered. Thank you. Lots of extra time. I will restore your rebuttal. Thank you. And we'll hear next from Judge Rogowski. Good morning, your honors. May it please the court. I want to start where we ended with the jury instruction on secondary considerations of non-obviousness. And I want to go first to the legal question about which court law applies. But even if we assume that the First Circuit law applies, the First Circuit applies harmless error generously in this case. And it's not the case, as we just heard, that the First Circuit will only uphold a verdict if the verdict form spelled out which theories apply to which claims. That wouldn't be a general verdict form at all. So the cases that are cited in the briefing are about general verdict forms where that type of differentiation was not made. But here the jury was instructed and our expert testified that indefiniteness and written description only applied to a subset of claims. So even if we're looking to First Circuit law, the court can be reasonably sure that what the jury did here was find obviousness of all asserted claims because the jury invalidated all asserted claims. And there's no question that they were properly instructed that obviousness applied to all claims and the 112 defenses applied only to the claims that had the hinge height limitation. So that's on the general verdict form. But going to the instruction on secondary considerations of obviousness specifically, Inline's technical expert only testified as to commercial success and long felt need. That testimony is Appendix 2024 through 2031. So that matches what the district court instructed the jury. And although Inline has raised an issue that it may have offered evidence on things like copying and industry praise, if the court looks closely at those appendix citations, one, copying, what they've cited is demand letters that they sent to competitors alleging infringement. That's not sufficient under this court's law to establish copying. Copying as to Lucerda, the jury found that Lucerda didn't infringe so it was certainly reasonable for the jury to find that Lucerda did not copy. There was a handful of claims for which the district court had granted summary judgment that Lucerda did infringe, right? I don't believe that validity of those was presented to the jury. So you can't use non-infringement by the jury to erase that. I don't believe that that's the case, Your Honor. The evidence that was put in as to Lucerda's alleged copying is not sufficient under this court's case law either. And this evidence was marginal out of the whole focus of the case that they put on as to secondary considerations. But also importantly, Inline did not raise a distinct objection that stated the jury did not have the right to infringe. So I don't support that. Unless you have something new to say that you didn't say in your red brief, I was not persuaded by your forfeiture argument on that. So I'm really struggling with other things that seem to please me much more on the table. So there was industry praise evidence put in these letters and whatnot. At least that part of it was the subject, if I remember correctly, of argument in closing by counsel. Why does the absence of expert testimony about that, about industry praise, about the factors other than the two that the judge mentioned, justify not mentioning these other considerations that are part of secondary consideration law? It's not necessarily, Your Honor, that it justifies it. But where even if you assume that the instruction was wrong, there still needs to be error shown. I'm sorry, there still needs to be prejudice shown. And Inline has not made that showing because its evidence on these other points was weak to the point that it cannot be said it would have swayed the jury's judgment. It would have swayed the jury's verdict on obviousness in light of both the strong evidence of obviousness and that most of its evidence on secondary considerations. Suppose I thought that on the art side of the obviousness analysis, the so-called prima facie case, that there's no ground for reversal on that. But that's evidence that could cause genuine debate. That's evidence that could cause genuine debate. Reasonable debate. So it's not compelling on its face in the way that sometimes means secondary considerations clearly could not overcome it. And then there are different, within the realm of secondary considerations, the different considerations come with different factual focuses. Commercial success may have to do with numbers of sales and market calculations, whereas industry praise is much less numerical, but really may matter a lot. In fact, it may have come out even before the product was selling in the market for long enough for commercial success even to be measured. But that wouldn't make the different focus, the industry praise factor, weightless. I don't know about copying. I guess I've been focusing on the industry praise piece of it. It's not clear to me on its face why an instruction that said, limit your focus to the commercial, implicitly said, limit your focus to the commercial success and what long felt need. Is that the other one that was mentioned? Yeah. Really enables us to say that it was non-prejudicial for the jury not to be told. There are other ways of looking at this human reaction evidence for judging obviousness. So the only industry praise evidence I'm aware of that is separate from the commercial success declarations is the industry awards. So our position is that that evidence is not substantial enough to have swayed the jury's verdict. And it's in-line's burden to show that there was prejudice from the jury not being instructed on those additional secondary consideration factors. And prejudice here means that it, understanding that the argument has to be that this could not have swayed a reasonable jury. Some standard like that is the prejudice standard. Not that you're asking us to say it wouldn't have swayed the jury. I believe it's in-line's burden to show that it could have changed the jury's verdict on obviousness. I believe that's a correct statement of the law. And you think not because? Because the additional evidence beyond commercial success and long felt need was marginal. And the jury was instructed on the two considerations. So I think I'm not quite understanding. When you say the additional evidence, it sounds to me like maybe you're saying each piece of evidence goes in one box or another. If it's in the commercial success box, then we're not going to think about it in any of the other boxes. I don't think it works like that. No, that's not what I'm meaning to suggest, Your Honor. I think that most of their secondary considerations evidence can be characterized as going to commercial success and long felt need. But to the extent that they're arguing that they had additional evidence at trial that would not be captured in those two factors and could not fairly be said to fall within that, we heard about industry praise, copying, and licensing. And my response is that, one, as I said, I don't think any of the copying evidence rises to the level of what this court has held is sufficient to show copying. Licensing, they had one license that was to a related company in Europe, which also just goes to that evidence that may not have been captured by commercial success and long felt. So I've changed the jury's verdict. Why couldn't the jury have rejected the commercial success evidence because they thought the commercial success was due to marketing and the like, but if they'd been properly instructed on industry praise, they might have reconsidered and said, well, even if your commercial success was due to marketing, all this praise also suggests that it was not obvious. Why isn't that a plausible argument? It's not plausible based on the evidence that came in at trial because, again, outside of the commercial success declarations that also go to industry praise, there was marginal evidence. There was a few more. That's not really answering my question, I don't think, because I think I'm trying to ask in a different way what Judge Toronto was asking you, which is the same piece of evidence can be considered in two ways. And even assuming the jury rejected the commercial success evidence, let's just assume they rejected it because they thought commercial success was due to marketing, they still could have looked at that same evidence and said, well, maybe it didn't drive commercial success, but it definitely shows great industry praise, and that could have contributed to a non-obvious misfinding. So just because it's evidence rejected for one reason under one factor doesn't mean it's necessarily rejected under all factors, does it? No, Your Honor, but in this analysis... But how do we know that the jury rejected that evidence showing industry praise under a proper instruction of how industry praise plays into secondary considerations? I don't think we need to know whether the jury rejected that evidence because it could have been a non-obvious misfinding. Whether the instruction was prejudicial is looked at in the context of the entire trial, so it's looked at in the context of what was the evidence of obviousness that was put on, and then what was the evidence of secondary considerations. So the jury doesn't have to outright reject the secondary considerations evidence to still find the patents obvious. Do you think it was just an oversight by the district court? I think it either could have been an inadvertence by the district court or the district court conforming the instruction to their expert's testimony. That was specifically on commercial success and long-felt need. Is that permissible to confine jury instructions to only what the expert testified to when there were other witnesses testifying to these other factors, and there was evidence entered into the record about these other factors? And at least in the closing argument, they talked about commercial success and they appeared to also talk about industry praise. No, Your Honor. And I know I don't have one of you on this issue, but that's why this goes back to the need for NLINE to object distinctly and to say that even if the record was left, it's not clear from the record what the district court did and why, and raising this as one of seven or eight objections, seven of which were raised the day before. Let's assume the objection was good enough to put the judge on notice that there was a gap in the jury instructions and an opportunity for the judge to therefore cure that gap, but for whatever reason the judge silently just let it go and stuck to the original incomplete instructions. So then I guess we get back to this harmless error question. Yes, Your Honor. Then it would be a harmless error question. Can I ask a different aspect of the harmless error question? Now let's assume that the instructional error, or let's focus on the possibility that there was a different instructional error, not the one under 103, but either or both of the two 112 instructions. Let's start with written description. First of all, do you dispute that that instruction should not have been given? We do dispute that, Your Honor. Their expert did testify briefly as to written description. That's at appendix 1090. Their expert? Yes. Yes, that's correct. This is a defense of yours? Did you have evidence and expert support for a lack of adequate written description? Yes. Sorry for stepping on you, Your Honor. Yes. Our expert did testify as to ways in which the invention in the patents was not understandable to one of skill in the art. And although that was in the context of indefiniteness, our position is that that can also support a written description defense, because that's part of the written description analysis as well. Let's assume that I looked at your expert's testimony and I don't feel one wave of a hint of written description analysis in there, and it's all devoted exclusively to indefiniteness. That's correct. So then, in that way, there wasn't an actual case by your side trying to pull down any of the claims on written description. So what do we do then? That's when the concept that I started with, the First Circuit's application of harmless error generously in situations where there's a general verdict. They will uphold the verdict if any of the theories is legally sufficient. I'm sorry. It has sufficient evidentiary support, as long as they can be reasonably sure that the jury relied on a legally sufficient support theory. And then, theoretically, I guess to follow through on Judge Toronto's question, let's say this court were to find that there was a problem with the jury instructions on 103, because there was a gap in the secondary consideration instructions. So there's a problem on 103. There's a problem on written description. If you wanted to still defend the indefiniteness during instructions, that would only address some of the claims, right? Not all of the claims. That's correct, Your Honor. Okay. And so, what's the defense of permitting indefiniteness to have been considered? I don't know. I'm not sure. I'm not sure. Is that a triable issue here? Yes. So, what was raised by in line below in a motion in limine was that Lacerda had waived this issue by not including it in our invalidity contentions. That is not accurate. In our first invalidity contention, it was disclosed. I can have a minute to find the site. That's at appendix 9010. And then, in later amendments to our contentions, it was carried forward in the non-infringement section of our combined contentions. It was also timely disclosed in our expert's report. And it was not waived solely by us not raising it at Markman. So, that was the only argument they made below as to why indefiniteness should not come in at trial. All of the additional... They made an additional, or at least are making an additional argument to us that this indefiniteness question is a question of law. And it needs to be resolved by the district court, not by the jury. And therefore, it was wrong to submit this issue to the jury. In line is now arguing that. It never made that argument to the district court. Once it lost the motion in limine, it did not object to the jury being instructed on indefiniteness after the testimony came in. And that argument was not raised below. So, it's forfeited on appeal. It's also wrong on the merits where there is a factual dispute about what a person of skill in the art would understand. This court has held that it is appropriate to send indefiniteness to the jury. And that's the case here. And the additional argument that was raised that our expert's trial testimony was somehow different from what was in his expert report. That is inaccurate. It was also raised for the first time in in line's reply brief. So, double forward forfeiture, not raised below, not raised in the opening brief. But it's also incorrect. Our expert's report did refer to there being two dictionary definitions of the word height. But that was in the context of saying no matter which dictionary definition you used, a person of skill in the art would not understand how to measure that hinge height. That is the exact opinion he gave at trial. So, those additional arguments. And what about the Baldwin rule? Which is, I believe, if there is a defect in one of the alternate theories, then therefore you can't try to sustain the verdict based on the non-defective theory? Yes. So, two points, Your Honor. One, the Baldwin rule as applied by the Supreme Court applies to legally defective theories, not to theories that don't have sufficient evidence, which is what they're arguing with respect to at least written description. But the First Circuit does apply a version of the Baldwin rule. And that's where the concept of can the court be reasonably sure that the jury relied on a theory with adequate evidentiary support? And the key here is that all claims were invalidated. The only way that the jury could have reached that is by finding obviousness. Because the other two 112 defenses don't apply to all claims. The context of my question is now different. If we conclude there's a problem with the 103, and there's a problem with the written description, and now we're trying to figure out, is it reasonable to assume that the jury for the hinge height claims found them indefinite rather than obvious, then maybe you have a point. But I guess the problem right now is I can't see whether that's true or not. If we have to send it back on obviousness, we can't reasonably assume the jury found indefiniteness as to the claims it was asserted against, can we? I get your argument the other way, that if we find problems with indefiniteness and written description, we can still reasonably assume the jury found obviousness because it related to all of them. But if obviousness is out and written description is out, that's parsing it pretty fine to say, well, the jury probably found just those claims indefinite, right? Why you would say that would be a more difficult call for the court to make, that the jury had relied on a theory with adequate support, but if... I mean, if we're going to send it back for a new trial anyway, why wouldn't we just send it back on all the claims again to be sure that the jury is finding on the right basis? Because in indefiniteness, there has been no argument made that the indefiniteness argument was not legally sufficient to support the jury's verdict. They didn't request JMAL on that issue on appeal. And so, at least as to those claims as to which indefiniteness applies, I understand why your Honor thinks it would be a harder call, but there is legally sufficient evidence in support of those claims. And the appeals court tries to... gives the jury on questions about legal sufficiency of the evidence the benefit of doubt that the jury can make those calls correctly as opposed to a legal defect in a theory, which is not the case here. Thank you. Three minutes for rebuttal, please. Yes, Your Honor. Thank you. I don't anticipate needing it since we didn't get into the cross appeal on any level. So I think our briefing, I think, stands for that in that we think the fact that they're suggesting this was an exceptional case. So the only thing I'll address in rebuttal, Your Honor, is that Judge Hillman ruled the 640 patent was infringed. In order to do that, he would have had to review the claims, which included a hinge height limitation. And so by virtue of that, I think there's some implication that he had performed his own analysis at that point in time that this limitation was infringed. Thank you, Your Honor.